IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JACQUELINE GOODALL,

    Plaintiff,

v.                                        Civil Action No. 3:22-cv-534

LVNV FUNDING, LLC,

    Defendant.

MEMORANDUM OPINION

This matter is before the Court on DEFENDANT LVNV FUNDING, LLC'S MOTION TO DISMISS AMENDED COMPLAINT (ECF No. 20) (the "Motion"). For the reasons set forth below, the Motion will be granted in part and denied in part.

BACKGROUND

I. Factual Background

The facts alleged in the AMENDED COMPLAINT (ECF No. 19) ("AC") are straight forward. Jacqueline Goodall ("Goodall") allegedly incurred a debt with Synchrony Bank. AC ¶ 12. On or about September 16, 2021, LVNV Funding, LLC ("LVNV"), a business entity registered in Delaware with its principal place of business located in Nevada, brought suit against Goodall in the Circuit Court of Chesterfield

County, Virginia to collect this debt. AC ¶¶ 8, 13. When LVNV filed that suit, it was not registered with the State Corporation Commission ("SCC") for Virginia. AC ¶ 14.[1]

Goodall first appeared in the state case without counsel in a hearing on October 26, 2021 where the state court set the matter for trial and ordered that LVNV file a Bill of Particulars and that Goodall file a Grounds of Defense. AC ¶ 15. LVNV filed its Bill of Particulars on November 1, 2021, and Goodall filed her Grounds of Defense on February 25, 2022. AC ¶¶ 16, 18.

Goodall then retained counsel, and, through counsel, she moved the state court to dismiss the case because LVNV was in violation of Virginia Code § 13.1-1057(A), having not registered with the SCC. AC ¶¶ 20-21. On April 4, 2022, the state court held a hearing to consider the motion for dismissal, among other matters. AC ¶ 22. At the hearing, the state court asked if LVNV intended to register with the Virginia SCC, and LVNV represented that it did not intend to register. AC ¶ 22.

After argument, the state court granted the motion and dismissed the suit without prejudice, allegedly on the grounds

---

[1] The AC makes this allegation. The undisputed record is that LVNV, in fact, is not so registered and that it has that status intentionally and permanently.

that LVNV was not registered with the SCC. AC ¶ 23. However, the state court record supplies no documentation of the reason for the dismissal.

## II. Procedural History

To recover statutory damages, damages for the mental and emotional injury she suffered as a result of the state lawsuit, and the attorneys' fees for those proceedings, Goodall filed this action on August 2, 2022, asserting one count under the Fair Debt Collection Practices Act ("FDCPA"), codified at 15 U.S.C. §§ 1692-1692p. AC ¶¶ 31-33. COUNT ONE alleges that LVNV violated the FDCPA by:

> (1) using "abusive and harassing actions in the collection of a consumer debt" in violation of 15 U.S.C. § 1692d;
>
> (2) "falsely represent[ing] that a garnishment could occur" in violation of 15 U.S.C. § 1692e(4);
>
> (3) falsely taking or threatening an action that LVNV could not take in violation of 15 U.S.C. § 1692e(5); and
>
> (4) using unfair or unconscionable means to collect the alleged debt in violation of 15 U.S.C. § 1692f.

AC ¶ 35. The AC further alleges that Goodall "is entitled to statutory damages, actual damages, attorney fees, and costs, pursuant to 15 U.S.C. § 1692k(a)." AC ¶ 36.

On November 11, 2022, LVNV filed DEFENDANT LVNV FUNDING, LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV.

3

P. 12(b)(6) (ECF No. 6), arguing that LVNV was not "transacting business" within the meaning of Virginia Code § 13.1-1057(A) when it filed the state court action against Goodall, so it did not need to register with the SCC. ECF No. 7 at 6. Goodall filed a response (ECF No. 10) on November 22, 2022, and LVNV filed its reply (ECF No. 11) on November 28, 2022. The Court issued an ORDER (ECF No. 18) on February 16, 2023, granting LVNV's motion to dismiss without prejudice and with leave for Goodall to file an Amended Complaint. Goodall did so on March 13, 2023, and LVNV filed the Motion at issue on March 31, 2023. Goodall filed a response on April 14, 2023 (ECF No. 23), and LVNV filed a reply on April 20, 2023 (ECF No. 24).

## STANDARD OF REVIEW

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plaintiff need not provide "detailed factual allegations," Twombly, 550 U.S. at 555, but must provide enough factual context so the court can draw reasonable inferences that there is "more than a sheer possibility that the defendant acted unlawfully." Iqbal, 556 U.S. at 678. Legal

conclusions, a bare recitation of the elements of a claim, and "naked assertions devoid of further factual enhancement" are insufficient. Id. (quoting Twombly, 550 U.S. at 555, 557).

Factual allegations—but not legal conclusions—are accepted as true for the purpose of evaluating the motion. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). If the alleged facts make clear that, as a matter of law, "no relief could be granted under any set of facts that could be proved consistent with the allegations," the court can dismiss the claims. Neitzke v. Williams, 490 U.S. 319, 326-27 (1989) (quotations omitted).

When evaluating a Rule 12(b)(6) motion, the court may only rely on "the complaint in its entirety" and "documents attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). A document is incorporated into the complaint when "it is integral to the complaint and there is no dispute about the document's authenticity." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016). A court may also take judicial notice of matters of public record and "adjudicative facts" pursuant to Federal Rule of Evidence 201(b) when considering a Rule 12(b)(6) motion. Goldfarb v. Mayor & City Council of Balt., 791 F.3d 500, 508 (4th Cir. 2015); Greenhouse v. MCG Cap. Corp., 392 F.3d 650, 657 (4th Cir. 2004). However, judicial notice should not "be used as an expedient for courts to consider matters beyond the pleadings

and thereby upset the procedural rights of litigants to present evidence on disputed matters." Waugh Chapel S., LLC v. United Food & Com. Workers Union Loc., 728 F.3d 354, 360 (4th Cir. 2013) (quotations omitted). If the court does take judicial notice of a document, the facts within that document must be construed in a light favorable to the plaintiff. Zak v. Chelsea Therapeutics Int'l, Ltd., 780 F.3d 597, 607 (4th Cir. 2015). If a court chooses to go beyond these documents, the Rule 12(b)(6) motion converts into one for summary judgement, which is governed by Rule 56. Fed. R. Civ. P. 12(d).

## DISCUSSION

### I. Parties' Arguments

First, and principally, LVNV argues that the plain language of the Virginia Limited Liability Company Act ("LLC Act") makes clear that foreign limited liability companies ("LLCs") that do not "'transact[] business' in Virginia within the meaning of the Act" do not need to register with the SCC. ECF No. 21 at 6-7. LVNV argues that, under Virginia Code § 13.1-1059(A), "maintaining, defending, or settling any proceeding," "[c]reating or acquiring indebtedness," and "[s]ecuring or collecting debts" are not considered "transacting business," so a foreign LLC does not need to register if it is only "filing and maintaining a lawsuit, creating or acquiring a debt, or collecting a debt." Id. at 7-8.

6

LVNV supports this reading of the statute by differentiating the meaning of "transacting business" in the LLC Act from the meaning of "transacting any business" in Virginia's long-arm statute (Va. Code § 8.01-328.1), arguing that the LLC Act specifically states that the term "transacting business" does not carry the same meaning as the similar term in the long-arm statute. Id. at 8. LVNV also points to cases in other states with similar laws wherein courts found that businesses, including LVNV, did not have to register in that state to bring a collection action. Id. at 11 n.18 (citing other cases, such as Swinson v. LVNV Funding, LLC, No. 08-1635-PHX-ECV, 2009 WL 10673002 (D. Ariz. Feb. 20, 2009), and Hatfield v. Portfolio Recovery Assocs., LLC, No. 15-14254, 2017 WL 405939 (E.D. Mich. Jan. 31, 2017)). And, in any event says LVNV, the AC does not contain any factual allegations of activities that would show LVNV was transacting business. Id. at 9-10.

Second, LVNV contends that the Supreme Court of Virginia's opinion in Nolte v. MT Tech. Enters., LLC, 726 S.E.2d 339 (Va. 2012), on which Goodall relies, does not apply here because the parties stipulated in Nolte, and the Supreme Court of Virginia agreed, that the foreign LLC was transacting business in Virginia, so that Court never reached the dispositive question in this case. ECF No. 21 at 12. Relatedly, LVNV argues that Richardson v. William Sneider & Assocs., LLC, No. 4:12-cv-25, 2012 WL 3525625 (E.D. Va.

7

July 24, 2012), also cited by Goodall, likewise does not apply to this case because "the Richardson court never analyzed whether the foreign [LLC] was actually 'transacting business' in Virginia." ECF No. 21 at 13-15.

Finally, LVNV looks to the Commerce Clause to argue that the LLC Act must be read to exempt certain activities that might be classified as transacting business in order to "survive[] constitutional scrutiny" by refraining from interfering in interstate commerce and "from restricting a party's right to petition for redress." Id. at 16-17.

In response, Goodall makes a handful of arguments. First, she argues that, pursuant to the Rooker-Feldman doctrine, LVNV is estopped from arguing that it was not transacting business as a matter of law because the state court "held that LVNV was transacting business sufficiently that § 13.1-1057 barred LVNV from proceeding" in the state court. ECF No. 23 at 1-2.[2]

Second, Goodall contends that LVNV's conduct "does not fall within any of the known exemptions [to the registration statute]

---

[2] In its reply, LVNV asserts that the Rooker-Feldman doctrine would not apply here because Goodall cannot meet the four elements necessary for the doctrine to "estopp [sic]" LVNV. ECF No. 24 at 5-7.

because it regularly files suits in state courts around the commonwealth, collects by phone and mails [sic], and garnishment actions." Id. at 2.

Third, Goodall maintains that filing a lawsuit is different from maintaining, defending, or settling an action, so § 13.1-1059(A) only applies to defenses of an action, not initiating an action. Id. at 2-3.

Fourth, Goodall argues that a reading of the plain text clearly shows that the other exceptions to "transacting business" relate only to "security interests in real property," which are not here involved. Id. at 3-4.

Fifth, Goodall makes the point that while a single transaction would be exempted from the registration requirement pursuant to § 13.1-1059(A)(10), LVNV regularly brings suits in state court, so it is required to register. Id. at 4.

Next, Goodall argues that LVNV ignored relevant state and federal precedent that support her arguments that her claims can proceed, including Nolte v. MT Tech. Enters., LLC, 726 S.E.2d 339 (Va. 2012), and Richardson v. William Sneider & Assocs., LLC, No. 4:12-cv-25, 2012 WL 3525625 (E.D. Va. July 24, 2012). ECF No. 23 at 4-5. Goodall also compares LVNV's actions with those of debt collectors in Maryland, arguing that, although the two state statues differ, debt collectors in both states must register if filing lawsuits. Id. at 6-7.

9

Finally, as to LVNV's Commerce Clause argument, Goodall responds that there is no discrimination against interstate entities because the fees are the same and the registration process is simpler as compared to Virginia businesses. Id. at 7.

## II. Rooker-Feldman Doctrine

The Rooker-Feldman doctrine is derived from Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983). The doctrine provides that there are "limited circumstances in which [the Supreme Court of the United States'] appellate jurisdiction over state-court judgments, 28 U.S.C. § 1257, precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 291 (2005); see also Lance v. Dennis, 546 U.S. 459, 463 (2006) (per curiam) (explaining that the doctrine precludes district courts "from exercising appellate jurisdiction over final state-court judgments"). Over time, the Supreme Court has significantly curtailed applicability of the doctrine. Exxon Mobil Corp., 544 U.S. at 287-88 (listing multiple Supreme Court cases where the doctrine was mentioned in passing or the Court found it did not apply). Additionally, both Rooker and Feldman involved "the losing party in state court fil[ing] suit in federal court after the state proceedings ended." Id. at 291. So, it is clear

10

that the doctrine does not apply if "a plaintiff in federal court does not seek review of the state court judgment itself but instead 'presents an independent claim.'" Thana v. Bd. of License Comm'rs for Charles Cnty., Md., 827 F.3d 314, 320 (4th Cir. 2016).

Here, the Rooker-Feldman doctrine does not preclude the Court from deciding LVNV's Motion. A review of the state court docket[3] does not show that a final state-court judgment was entered. ECF No. 7-1 at 1. Nor does the AC allege that fact. See Va. Concrete Co. v. Bd. of Supervisors of Fairfax Cnty., Va., 91 S.E.2d 415, 419 (Va. 1956) (explaining that the dismissal of a case "stands on the same footing as a nonsuit and does not bar further action for the same cause" and does not operate as a final judgment). Rather, the case was dismissed without prejudice. AC ¶ 23; ECF No. 7-1 at 1. Additionally, neither party is complaining of "'injuries caused by state-court judgments." Moore v. Commonwealth of Va. Dept. of Soc. Servs., No. 3:15-cv-515, 2016 WL 775783, at *3 (E.D. Va. Feb. 25, 2016) (quoting Willner v. Frey, 243 F. App'x 774, 746 (4th

---

[3] LVNV attached the state court docket sheet to its Memorandum of Law in support of its first Motion to Dismiss (ECF No. 7). This document is integral to the AC because the AC specifically mentions the state court proceedings. AC ¶¶ 13, 15-23. Additionally, the court docket sheet is a matter of public record, so the Court is permitted to take judicial notice of it. Goldfarb v. Mayor & City Council of Balt., 791 F.3d 500, 508 (4th Cir. 2015). Goodall also does not challenge its inclusion considering that she cited the document in her response. ECF No. 23 at 2. Accordingly, the Court can properly consider the state court docket sheet in deciding the Motion.

Cir. 2007)). Rather, Goodall is complaining of injuries caused by the filing of the lawsuit. Accordingly, the Rooker-Feldman doctrine cannot be applied, and the Court is not precluded from deciding the Motion on the grounds argued by LVNV.

### III. Merits of the Motion to Dismiss

To begin, the dispositive question is the meaning of Virginia Code § 13.1-1057(A), which provides that: "[a] foreign limited liability company transacting business in the Commonwealth may not maintain any action, suit, or proceeding in any court of the Commonwealth until it has registered in the Commonwealth." That determination calls into play the meaning of Virginia Code § 13.1-1059(A), which provides a list of activities that do not constitute transacting business, including "[m]aintaining, defending, or settling any proceeding" and "[s]ecuring or collecting debts or enforcing deeds of trust and security interests in property securing the debts." Both statutes use the term "maintain."

Although a state court in Virginia has yet to define "transacting business" in the context of these two statutes, the Supreme Court of Virginia has defined "maintain" in § 13.1-1057 to mean "'to continue (something),' not to start or commence." Nolte v. MT Tech. Enters., LLC, 726 S.E.2d 339, 345 (Va. 2012) (emphasis added). This clear, unambiguous definition of "maintain" necessitates that the Court interpret the term "maintain" in § 13.1-1059(A) to exclude continuing, defending, or settling any

12

proceeding from being classified as activities that constitute "transacting business" but to include the starting and commencing of any proceeding as activities that constitute "transacting business." Accordingly, because LVNV "<u>files</u> actions in many courts around the Commonwealth of Virginia," it is transacting business within the meaning of the statute. AC ¶ 26 (emphasis added).

It then follows that, because LVNV was transacting business by filing the state action against Goodall, it must adhere to the requirements of § 13.1-1057(A).[4]

It is true that, under <u>Nolte</u>, LVNV is permitted to register at some time "prior to the time of final judgment" to comply with § 13.1-1057(A). <u>Nolte v. MT Tech. Enters., LLC</u>, 726 S.E.2d 339, 345 (Va. 2012) (quotations omitted); <u>see also</u> <u>Richardson v. William Sneider & Assocs., LLC</u>, No. 4:12-cv-25, 2012 WL 3525625 (E.D. Va. July 24, 2012) (restating <u>Nolte</u>'s holding as "a foreign limited liability company may file suit in Virginia without first registering for business as long as it registers before the final disposition of the case"). So, in concept, that rule in <u>Nolte</u> could provide LVNV an escape hatch from the FDCPA claim based on the failure to register theory in COUNT ONE.

---

[4] LVNV argues that <u>Nolte</u> does not apply here because the parties in <u>Nolte</u> assumed that the defendants were transacting business in Virginia while that is the point of dispute in the present case. ECF No. 21 at 11-12. That may well be true, but this Court cannot ignore the Supreme Court of Virginia's clear-cut definition of a word in the statute that this Court is analyzing.

13

However, as alleged in the AC, and admitted by LVNV, it had (and, indeed, has) no intention of ever registering with the SCC, so a judgment against Goodall and in favor of LVNV could never have been entered in LVNV's favor. Accordingly, the Court finds that Goodall has sufficiently alleged a claim under 15 U.S.C. §§ 1692e(4) and (5) because the facts alleged in the AC support the allegations that LVNV "falsely took or threatened an action that could not be taken, in the collection of a consumer debt" and LVNV "falsely represented that a garnishment could occur" by filing a lawsuit against Goodall to collect on a debt without any intention of registering with the SCC as required and thus without any possibility of collecting through a judgment. AC ¶ 35(c).

The exemption to "transacting business" under § 13.1-1059(A)(8) for "[s]ecuring or collecting debts or enforcing deeds of trust and security interests in property securing the debts" does not save LVNV from having to register.[5] The Court must read that exemption to exclude the act of filing lawsuits in order to collect a debt because, if the exemption did include the filing of lawsuits, the first provision exempting only the maintenance (defined as "continuing" per Nolte) of lawsuits would be

---

[5] Moreover, the AC does not allege any facts that show LVNV created or acquired indebtedness. Accordingly, the exemption for "[c]reating or acquiring indebtedness, deeds of trust, and security interests in real or personal property" from § 13.1-1059(A)(7) does not apply, and that argument will not be further addressed.

meaningless. See King v. St. Vincent's Hosp., 502 U.S. 215, 221 (1991) (explaining that "the meaning of statutory language, plain or not, depends on context"). Accordingly, although activities to secure or collect a debt do not constitute "transacting business" under §§ 13.1-1057(A) and § 13.1-1059, filing lawsuits to collect on a debt is not included as an exempted activity when the statues are construed so as to give each meaning.

In addition to its plain-text argument, LVNV makes two additional arguments that the Court finds similarly unavailing. First, LVNV provided a number of citations to cases from various states that have similar LLC statutes where the courts found that filing lawsuits was not considered "transacting business" within the meaning of those states' statutes. ECF No. 21 at 11 n.18. However, there is no evidence that those state courts had provided a definition of "maintain" such as the Supreme Court of Virginia provided in Nolte. That significant difference allows the Court to reach a different conclusion in this case than did the other courts in analyzing similar situations. For example, in Hatfield v. Portfolio Recovery Assocs., LLC, the U.S. District Court for the Eastern District of Michigan found that the defendant was not transacting business within the meaning of Mich. Comp. Laws § 450.5007(1) (West 1993)[6] when it was filing lawsuits to collect on

---

[6] Section 450.5007(1) provides that "[a] foreign limited liability company transacting business in this state without a certificate

debts. No. 15-14254, 2017 WL 405939, at *3 (E.D. Mich. Jan. 31, 2017). However, in interpreting § 450.5007(1), the court did not have an opinion from the Michigan Supreme Court or any other state court that defined "maintain" within the context of that statute. In fact, a review of cases from the Michigan Supreme Court did not reveal a single case where the court was interpreting § 450.5007(1). The same is true for the cases from the other states. Accordingly, because the controlling state law in this case is different than the law cited by LVNV, the law from the other states is not persuasive in deciding the rule in Virginia.

Second, LVNV argues that its reading of §§ 13.1-1057(A) and 13.1-1059 must prevail because it is consistent with the Commerce Clause. ECF No. 21 at 16-17. The doctrine known as the dormant Commerce Clause prevents states "from retreating into economic isolation" while prohibiting "regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." Okla. Tax Comm'n v. Jefferson Lines, Inc., 514 U.S. 175, 180 (1995); New Energy Co. of Ind. v. Limbach, 486 U.S. 269, 273-74 (1988). Under the dormant Commerce Clause, "[s]tate laws discriminating against interstate commerce on their face are virtually per se invalid." Fulton Corp. v. Faulkner, 516 U.S. 325,

---

of authority shall not maintain an action, suit, or proceeding in a court of this state until it has obtained a certificate of authority."

331 (1996) (quotations omitted). However, "nondiscriminatory regulations that have only incidental effects on interstate commerce are valid unless 'the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.'" Or. Waste Sys., Inc. v. Dep't of Env't Quality of the State of Or., 511 U.S. 93, 99 (1994) (quoting Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970)).

Here, Virginia's laws pertaining to foreign LLCs are not discriminatory because domestic LLCs are also required to register and pay an annual fee. Commonwealth of Va.: State Corp. Comm'n, Annual Registration Fees, https://scc.virginia.gov/pages/Annual-Registration-Fees (Accessed May 4, 2023). Moreover, as Goodall notes in her response, the registration process for foreign LLCs is relatively simple, so there is no excessive burden on interstate commerce. ECF No. 23 at 7. Likewise, the Court's interpretation of the LLC Act does not create redressability issues as LVNV suggests because a foreign LLC can still file a lawsuit in state courts for redress of grievances; it just needs to register before a final judgment is entered. Additionally, if the need to register was actually an impediment to redress, § 13.1-1057(A) would be constitutionally impermissible on its face because it plainly requires that foreign LLCs transacting business in Virginia register with the SCC. The Court declines to read the statute in that manner. See Jennnings v. Rodriguez, 138 S. Ct. 830, 836 (2018)

("[W]hen statutory language is susceptible of multiple interpretations, a court may shun an interpretation that raises serious constitutional doubts and instead may adopt an alternative that avoids those problems."). Accordingly, the Court finds this argument unpersuasive.[7]

### IV. Twombly and Iqbal

Although Goodall has sufficiently alleged a claim under §§ 1692e(4) and (5), she has failed to provide sufficient allegations to support a FDCPA claim under §§ 1692d and 1692f as required by Twombly and Iqbal. The AC uses language taken directly from the statue to allege that LVNV "used abusive and harassing actions" and "used unfair or unconscionable means to collect the alleged debt" in violation of the FDCPA. AC ¶¶ 35(a), (d). However, the facts alleged in the AC do not show that any of these actions occurred, and, under Twombly and Iqbal, the Court cannot accept conclusory factual statements or conclusions of law as true. Goodall was given the opportunity to cure this defect in her initial COMPLAINT, but she failed to do so with the AC. See ECF No. 18 at 1-2. Accordingly, the Court finds that the Motion must be granted as to these specific claims under COUNT ONE of the AC.

---

[7] The Court declines to address Goodall's arguments on whether §§ 13.1-1059(A)(7) and (8) relate only to security interests in real property and whether only a single transaction would be exempted because it is not necessary to assess these arguments to decide the Motion.

However, taking into account what the record does show about LVNV's willingness to file suit without the ability to ever secure a judgment, there is good cause to dismiss these claims without prejudice and with leave to file a Second Amended Complaint that adheres to the dictates of Twombly and Iqbal. Counsel for Goodall is admonished that no further amendment will be permitted.[8]

## CONCLUSION

For the foregoing reasons, DEFENDANT LVNV FUNDING, LLC'S MOTION TO DISMISS AMENDED COMPLAINT (ECF No. 20) will be denied as to the claims under 15 U.S.C. §§ 1692e(4) and (5) and granted without prejudice and with leave to file a Second Amended Complaint as to the claims under 15 U.S.C. §§ 1692d and 1692f.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: May 25, 2023

---

[8] When preparing the Second Amended Complaint, counsel would be wise to more carefully study the FDCPA and the federal pleading requirements.

19